UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.:  CR 11-376 JNE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | DEFERRED PROSECUTION |
| | ) | AGREEMENT |
| v. | ) | |
| | ) | |
| BIXBY ENERGY SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and Bixby Energy Systems, Inc. ("Bixby") agree to resolve this case on the terms and conditions set forth in this Deferred Prosecution Agreement ("the Agreement"). The Agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota.  This agreement does not bind any other United States Attorney's Office or any other federal or state agency.   The terms and conditions of this Agreement are as follows:

1.   **Criminal Information and Acceptance of Responsibility**

Bixby accepts and acknowledges that the United States will file a one-count criminal Information in the United States District Court for the District of Minnesota charging Bixby with conspiracy to commit an offense against the United States, that is securities fraud, in violation of 15 U.S.C. Sections 78ff and 78j(b).  In so doing, Bixby knowingly waives its right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United

SCANNED
DEC 15 2011
U.S. DISTRICT COURT MPLS

FILED   DEC 14 2011
RICHARD D. SLETTEN
JUDGMENT ENTD
DEPUTY CLERK

States Code Section 3161, and Federal Rule of Criminal Procedure
48(b).    In  addition,  Bixby  consents  to  the  filing  of  the
Information and the Agreement in the United States District Court
for the District of Minnesota.

2.    **Factual Basis**.    The defendant agrees that, were this
matter to go to trial, the United States would be able to prove
beyond a reasonable doubt that officers and/or agents of Bixby did
the following acts.

Bixby admits, accepts and acknowledges that it is responsible
for the acts of its officers, employees and agents, as set forth in
the Factual Basis.    Should the United States Attorney's Office
initiate the prosecution that is deferred by this Agreement, Bixby
agrees  that  it  will  neither  contest  the  admissibility  of,  nor
contradict, in any such proceeding, such facts.

Beginning  in  at  least  2006  and  through  May  2011,  Dennis
Luverne Desender, an agent of Bixby, aiding and abetting and being
aided and abetted by Individual A, an officer of Bixby, and others,
did knowingly, willfully, and unlawfully, by the use of means and
instrumentalities of interstate commerce, directly and indirectly
use  and  employ  manipulative  and  deceptive  devices  in  connection
with the sale of securities, and make untrue statements of material
facts and omit to state material facts necessary in order to make
the statements not misleading in connection with the sale of said

2

securities, in violation of Title 15, United States Code, Sections 78ff and 78j(b).

Beginning in at least 2006 through May 2011, Desender held various positions including contract Chief Financial Officer (CFO) and consultant for Bixby Energy Systems, Inc. (hereinafter referred to as "Bixby"). Desender, acting in concert with Individual A (an officer of Bixby), was primarily charged with raising funds for Bixby and its business projects.

In his official capacity for Bixby, Desender, Individual A, and others communicated with prospective investors and shareholders by telephone, mail, email, and in person, for the purpose of fraudulently inducing those investors or shareholders to provide funds to Bixby. Both Individual A and Desender knowingly and willfully caused investors who were not accredited investors to be solicited to invest in Bixby in violation of federal securities laws. In exchange for investment funds, Desender, Individual A, and others sold Bixby securities to investors. To entice the investors, Desender, Individual A, and others made, and caused to be made, numerous material false statements, false representations, and omissions about Bixby's business and the prospects of conducting an initial public offering of Bixby's shares.

Based on the misrepresentations made by Desender, Individual A, and others, investors provided investment money to Bixby for the sole purpose of investing in Bixby's business. Although some

investor money was used for the Bixby business, Desender and Individual A caused a significant portion of the investor's funds to be used for large salaries and commission payments to Desender, Individual A, and family members of Individual A, and other uses.

Desender, Individual A, and others acting on behalf of Bixby, both verbally and in written materials provided to existing and potential investors, made material misrepresentations and concealed material information about the prospects of Bixby to induce existing investors to remain invested in Bixby's business and to induce potential investors to invest additional funds. For example, with some investors, Desender and Individual A misrepresented (i) that fully functional commercial units for coal gasification were ready to ship to end users, when in fact, Desender and Individual A knew there were no fully functional coal gasification units that were ready to ship, and (ii) that Bixby was going to conduct an initial public offering of its shares in the near term, when in fact, Individual A and Desender knew that Bixby could not have an initial public offering because, among other things, Desender and Individual A knew that Bixby could not obtain approved audited financial statements. In addition, Desender and Individual A affirmatively concealed, and did not disclose, (i) that Bixby was in dire financial condition, and (ii) a majority of the investor money was going to pay commissions, large salaries,

4

travel and other fund raising expenses; and (iii) that investor money was being used to make payments to other investors.

As a result of such material misstatements and omissions by Individual A, aided and abetted by Desender, on or about July 29, 2010, L.L. invested in Bixby by wiring $100,000 to Bixby.

Bixby agrees that the fraud exposed investors to potential losses between $2,500,000 but not more than $7,000,000 in losses to investors in its various securities.

3. **Term of the Agreement**

This Agreement is effective for a period beginning on the latest date on which any party signs it and ending two (2) years and seven (7) calendar days from the date (the "Term"). However, Bixby agrees that, in the event that the government determines, in its sole discretion, that Bixby has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the government, in its sole discretion, for up to a total additional time period of one-year. Any extension of the Agreement extends all terms of this Agreement for an equivalent period. Conversely, the government may, in its sole discretion, terminate the Term of the Agreement early.

During the Term set forth above, this Agreement and all provisions set forth herein bind Bixby and any of its successors and assigns. If Bixby's assets or business operations are sold to a successor party or parties, whether by sale of stock, merger,

consolidation, sale of a significant portion of its assets, or other form of business combination, or otherwise undergo a direct or indirect change of control within the term of this Agreement, such party or parties shall be bound by this Agreement and all provisions set forth herein. Bixby shall include in any contract for the sale or merger a provision binding the purchaser/successor to the obligations of this Agreement. Conversely, the government may, in its sole discretion, waive the requirement that all provisions herein bind Bixby and/or any of its successors or assigns.

4. **Voluntary Cooperation**

The government enters into this Agreement based on the individual facts and circumstances presented by this case and Bixby. Among the facts considered were the following. Prior to May 2011, Bixby and its board of directors were controlled by Individual A. On or before early 2011, two of the outside directors developed concerns relating to Individual A and the company. In May 2011, these outside directors took control of the company and caused Individual A and his associates to leave the company. Thereafter, the company, led by the new board of directors caused Bixby to cooperate fully with the government's investigation in numerous respects: (a) Bixby voluntarily and timely disclosed the misconduct described in the Information and Factual Basis; (b) Bixby conducted a preliminary internal

6

investigation of that misconduct; (c) Bixby reported all of its findings from that internal investigation to the government; (d) Bixby cooperated in the government's investigation of this matter, providing the government with access to all relevant internal documentation; (e) Bixby has undertaken remedial measures as contemplated by this Agreement; and (f) Bixby has agreed to continue to cooperate with the government in any investigation of the conduct of Bixby and its directors, officers, employees, agents.

During the Term of this Agreement, Bixby agrees to cooperate fully with the government, and any other authority or agency, including but not limited to the Securities and Exchange Commission. Bixby agrees that its cooperation shall include, but is not limited to, the following:

a. Bixby shall truthfully disclose all information with respect to its activities and those of its present and former directors, officers, employees, agents, consultants, contractors and subcontractors, concerning all matters relating to corrupt payments, related false books and records, and inadequate internal controls about which Bixby has any knowledge or about which the government may inquire. This obligation of truthful disclosure includes the obligation of Bixby to provide to the government, upon request, any document, record or other tangible evidence relating to such corrupt payments, books and records, and internal controls

7

about which the government may inquire of Bixby.

b.   Upon request of the government, with respect to any issue relevant to its investigation, Bixby shall designate knowledgeable employees, agents or attorneys to provide to the government the information and materials described in Paragraph 5(a) above, on behalf of Bixby.  It is further understood that Bixby must at all times provide complete, truthful and accurate information.

c.   With respect to any issue relevant to the government's investigation of corrupt payments in connection with the operations of Bixby, or any of its present or former subsidiaries or affiliates, Bixby shall use its best efforts to make available for interviews or testimony, as requested by the government, present or former directors, officers, employees, agents and consultants of Bixby as well as the directors, officers, employees, agents and consultants of contractors and subcontractors.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law enforcement authorities. Cooperation under this paragraph will include identification of witnesses who, to the knowledge of Bixby, may have material information regarding the matters under investigation.

d.   With respect to any information, testimony, documents, records or other tangible evidence provided to the

government pursuant to this Agreement, Bixby consents to any and all disclosures to other governmental authorities of such materials as the government, in its sole discretion, shall deem appropriate.

5. **Corporate Compliance Program**

Bixby, governed by a new board of directors, represents that it will develop and implement a compliance and ethics program designed to detect and prevent securities law violations, including seeking and obtaining registration of its stock with the Securities and Exchange Commission.

6. **Deferred Prosecution**

In consideration of: (a) the past and future cooperation of Bixby described in Paragraph 4; (b) Bixby's removal of Bixby's officers implicated in the securities fraud violations; and (c) Bixby's internal remedial measures, the government agrees that any prosecution of Bixby for the conduct set forth in the Factual Basis for the conduct relating to information that Bixby disclosed to the government or for conduct of which the government had knowledge, prior to the signing of this Agreement, be and hereby is deferred for the Term of this Agreement.

The government further agrees that if Bixby fully complies with all of its obligations under this Agreement, the government will not continue the criminal prosecution against Bixby described in Paragraph 1 and, after the Term, this Agreement shall expire and the government will move to dismiss the criminal Information

9

pending against Bixby.

The government is not seeking a monetary penalty under this Agreement, due to Bixby's financial condition and the undue hardship such a penalty would impose on company shareholders.

7.  **Breach of the Agreement**

a.   If, during the Term of this Agreement, the government determines, in its sole discretion, that Bixby has committed any felony under federal law subsequent to the signing of this Agreement, has, at any time, provided deliberately false, incomplete or misleading information, or has otherwise breached the Agreement, Bixby shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. Any such prosecutions may be premised on information provided by Bixby.   Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Bixby notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term.   Thus, by signing this Agreement, Bixby agrees that the statute of limitations with respect to any prosecution that is not time-barred on the date of this Agreement shall be tolled for the Term.

b.   In the event that the government determines that Bixby has breached this Agreement: (a) all statements made by or on behalf of Bixby to the government or to the Court, including the

10

Factual Basis, and any testimony given by Bixby before a grand jury or any tribunal, at any legislative hearings whether prior or subsequent to this Agreement, or any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the government against Bixby; and (b) Bixby shall not assert and claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence or any other federal rule, that statements made by or on behalf of Bixby prior or subsequent to this Agreement, and any leads derived therefrom, should be suppressed.

c. Bixby acknowledges that the government has made no representations, assurances or promises concerning what sentence may be imposed by the Court if Bixby breaches this Agreement and this matter proceeds to judgment. Bixby further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

8. **Public Statements by Bixby**

Bixby expressly agrees that it shall not, through present or future attorneys, directors, officers, employees, agents or any other person authorized to speak for Bixby, make any public statement contradicting the acceptance of responsibility by set forth above. Any such contradictory statement may, subject to cure

11

rights of Bixby described below, constitute a breach of this Agreement and Bixby thereafter shall be subject to prosecution as set forth below. If the government believes that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the government shall so notify Bixby, and Bixby may avoid a potential breach of this Agreement by publicly repudiating or correcting such statement(s) within five (5) business days after notification. Consistent with the obligations of Bixby set forth above, Bixby shall be permitted to raise defenses and to assert affirmative claims in civil and regulatory proceedings relating to the matters set forth in the Factual Basis. This paragraph does not apply to any statement made by any present or former employee of Bixby in the course of any criminal, regulatory or civil case initiated against such individual, unless such individual is speaking on behalf of Bixby.

9. **Complete Agreement**. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

10. **Signed Agreement**.  This Agreement may be executed in counterparts and each such counterpart shall be considered an original and all such counterparts shall constitute one and the same instrument.

Date: 12/14/11

B. TODD JONES
United States Attorney

BY: CHRIS S. WILTON
Assistant U.S. Attorney

BIXBY ENERGY SYSTEMS, INC.

Date: 12/14/11

BY:
[Officer of the Company]

Date: 12/14/11

THOMAS HEFFELFINGER
Counsel for Defendant

13

**OFFICER'S CERTIFICATE**

I have read this Agreement and carefully reviewed every part
of it with counsel for Bixby Energy Systems, Inc. ("Bixby"). I
understand the terms of this Agreement and voluntarily agree, on
behalf of Bixby, to each of its terms. Before signing this
Agreement, I consulted with the attorney for Bixby. The attorney
fully advised me of the rights of Bixby, of possible defenses, of
the Sentencing Guidelines' provisions, and of the consequences of
entering into this Agreement.

I have carefully reviewed this Agreement with the Board of
Directors of Bixby. I have advised, and caused outside counsel for
Bixby to advise, that Board fully of the rights of Bixby, of
possible defenses, of the Sentencing Guidelines' provisions, and of
the consequences of entering into the Agreement.

No promises of inducements have been made other than those
contained in this Agreement. Furthermore, no one has threatened or
forced me, or to my knowledge any person authorizing this Agreement
on behalf of Bixby, in any way to enter into this Agreement. I am
also satisfied with the attorney's representation in this matter.
I certify that I am an officer of Bixby and that I have been duly
authorized by the Board of Directors of Bixby to execute this
Agreement on behalf of Bixby.

BIXBY ENERGY SYSTEMS, INC.

Date:  12/14/11

James G Bergeron
BY:
[Officer of the Company]

14